Mr. Cannebaker is back on the previous case. Jessica Weyant, yes, there you are. And that, I think you had your whole argument time, but we didn't hear from Ms. Dowie representing the Phia Group and Index. Did you, you had your full eight minutes, didn't you? I believe you did. I believe so, Your Honor. Okay, so let's hear from Ms. Dowie, who is not on video, but is on telephone, representing the Phia Group. Ms. Dowie, are you there? I am. She is on video. Oh. Excellent. You may proceed. I don't think we heard any of your argument with Mr. Cannebaker missing. Proceed. Thank you, Your Honor. I represent the Phia Group and Index Corporation. This case ultimately concerns a single conversion claim, which was brought prematurely and cannot succeed on the merits. This court should affirm the district court dismissal for three reasons. First, because there is subject matter jurisdiction. Second, because it was appropriate to require exhaustion in this case. And third, neither Ms. Weyant's self-funded health plan nor her Maryland settlement trigger the application of 5335. I'll first address the subject matter jurisdiction question. Yes, can you tell me why your brief supports finding the jurisdictional amount in this case? Because we believe that it is met. This case was, we originally removed this case to federal court based on the allegations of the complaint. So the actual damages are the $16,000. The original Consumer Protection Act claim would have added an additional 4,000 to that based on troubling some of the damages. And then I think I would agree that what we're really dealing with here is whether or not there is a completed damages claim. Why didn't you take the moment when we invited you to brief this to say no jurisdictional amount, dismiss the case? That would have been an easy call, don't you think? Well, if this court didn't have subject matter jurisdiction, the case wouldn't be dismissed, it would be remanded. No, it would be remanded with instructions to dismiss the case for lack of subject matter jurisdiction. It would go away. It would go away in federal court, but it would still potentially be live in the state courts. Yeah, that's exactly right. Which is maybe where it should be. And so we need to litigate it there. With respect to the jurisdictional amount, what is the appropriate standard? I mean, some of the case law says the plaintiff has to show a reasonable probability that the jurisdictional amount will be met. And then the fund cites some law that's saying it has to be legally certain that it can't be met. I mean, can you help us out on what the appropriate standard is? So my understanding is that the reasonable presumption standard is automatically met using the presumption that the plaintiff's claim, that the plaintiff's statement in the complaint that it's $75,000 or more is valid. So that presumption is met in this case, meaning that it would then turn to, is there a legal certainty that the amount could not be recovered? And had plaintiff been able to prove everything in her complaint, we don't believe that that's true. You don't believe it's true? Yeah, what's true? You don't believe what's true? We don't believe that there is a legal certainty that if she had proven everything in her complaint, she could not have recovered approximately $55,000 in punitive damages. You know, the general business law, the provision for going up to $1,000, I mean, that seems to be punitive damages because that talks about willful conduct. I mean, how can the plaintiff prove punitive damages of $55,000 in these circumstances? I think because under New York conversion law, what the jury would look to is what amount would it take to deter the malicious conduct? And so assuming that they found that the conduct was malicious, I think some of the things that it would be appropriate for them to look to are what amounts are plaintiff claiming that the corporations profited off of these practices? What amounts would it take them to not try things like this in the future? And I think it's important to note that this court in the Sure, the Equitable Life case explained quite clearly that the fact that a defendant may have defenses to the case, and even if those defenses appear facially valid, that that doesn't matter for the purposes of determining the amount in controversy. And so that is why here we do believe that the amount in controversy threshold is met. I also, as we cited in our letter brief, we believe that that's supported by a decision of this court from just last month in People's Club, which dealt with a Connecticut punitive damages claim. And similarly, there were actual damages of concededly less than $30,000. Turning to the main appeal, I would say that we completely agree with Judge Chin that this is a case that really from the beginning has been crying out for some earlier form of resolution, and that it's unfortunate that any judges need to be involved in this case at all. This is a situation where neither the plan nor its agents was given any opportunity before suit was filed, or indeed before they received a check. To hear what plaintiff's real arguments and concerns were, and what has been disclosed over the course of the litigation, is that those parties had specific procedures in place for addressing New York claims. Are they mandated by the policy such as it is? No, so the policies that I'm referring to are the ones that the district court discussed of the FIA group, which acts as an agent of the plan. I would also note, and I believe this is what Mr. Kannenbecker was about to discuss at the end of his argument, is that plaintiff doesn't only bring a claim under 5335. Plaintiff claims that the terms of the plan themselves bar this recovery. And I think that just goes to why administrative exhaustion is all the more important, because regardless of whether or not the plan has the ability to address the 5335 argument, though we believe that they do, ultimately, they are entitled to deference in the interpretation of their own terms. They have these administrative exhaustion policies that call for a review of any claim relating to benefits or to eligibility. Plaintiff has used them in the past. Certainly, she hasn't been shy about reaching out to the plan. She reached out to the plan for a copy of the plan document, but she hasn't involved them in the underlying dispute of whether or not the $16,000 should be returned. Quickly, I'd like to address the cross-appeal. I'm happy to answer any questions on whether or not the plan is an insurer, but Mr. Edwards plans to take the bulk of that argument. Well, why don't you answer that question? Do you think the plan is an insurer? The plan is not an insurer, and I would note that the statute that I believe Mr. Kammenbecker relies on, Insurance Code 1101, expressly applies only in the context of licensed insurers. And in this case, we know the plan is not a licensed insurer, and indeed, it is required to state on the cover of its plan document that not only is it not a licensed insurer, but that it can only- The statute does say other entity. It says insurance company or other entity. What does other entity refer to? So other entity could refer to a number of entities. I believe we cite a number of them on page five of our reply brief. Fraternal benefit societies, certain hospital service organizations, all operate under contracts of insurance or insurance policies, although they are not commercial insurers. You still have to have a contract of insurance is what you're saying? Yes, and so the contract of insurance definition that plaintiff is relying on only applies to licensed insurers. If you look at the text, it's immediately preceding the language that he cites. It says, as used in this article, which is article- And is there a contract of insurance in this case? We don't have another- There is not. A document for the self-funded benefit plan. So finally, 5335 cannot apply to plaintiff's Maryland settlement. Simply put, 5335 is directed at settlements. The first sentence discusses the types of settlements it covers, personal injury settlements. Inherently, because it's an act of the New York legislator, it only applies to New York settlements. That's also supported by section one of the bill itself, which is found at ECF 25.3 at 57, which specifically talks about clogging up New York courts with subrogation claims and allowing cases to settle faster by the enactment of this law. Because it can't apply to a Maryland settlement, it can't apply to plaintiff's case. Thank you. Thank you. Mr. Edwards. Good morning, Your Honor. May it please the court. You represent the school district, which is not a party, but merely an intervener. Or are you an intervener? Or did you just file an amicus brief? I was a third... I represent the plan itself, not the school district, but rather the plan itself. And the plan was a third-party defendant, which has now been dismissed as an appellant. And I believe the court indicated that it would consider the plan's brief as an amicus brief. So I'm here now on behalf as an amicus. And I would just want to dispel this notion that the plan is somehow providing insurance. It is not. As the counsel just before me indicated, the section out of the Insurance Law 1101 starts with the words in this article. And it only pertains to in this article, which has to do with the licensing of insurers. If we turn to the very next section, 1102 of the Insurance Law, it says that no person or entity may conduct an insurance business unless they are properly licensed in New York State. And it provides for a variety of penalties if you do so. Well, New York State knows well about the existence of this plan, and that it is not licensed under Article 11 because it doesn't offer insurance. It is authorized under Article 47 of the Insurance Code. And 4709C requires the plan to disclose on its face in bold point 10.5, that it's not an insurance company. And then in 4701D1, the legislative intent, which authorizes the plan to exist, spells out that the plan must, among other things, protect local taxpayers who fund this plan. And that is why the General Obligations Law does not apply to a municipal health plan. It's as simple as that. The General Obligations Law 5101, which defines an insurer, and which Judge Chen was pointing to, you know, it does refer to other entities that provide pay claims under a policy of insurance or an insurance contract. And this plan simply does not do that. There are some out there that do, but this is not one of them. I would ask that the court simply affirm the dismissal on the threshold ground that the General Obligations Law does not apply. Thank you. Thank you, counsel. Mr. Cannebaker, you're reserved two minutes for rebuttal. Turn on your microphone. Thank you, Your Honor. The focus, again, has improperly focused on just 5-335. The judge also ruled, and we have a count, that the plan itself, regardless of 335, does not authorize the subrogation that the plan undertook. So 335, other insurer, other entity, is still not even the full answer, because even if 553 did not apply, the plan's actions for subrogation was still not authorized by the plan. How did that affect your client, though? That it would mean that the subrogation is still improper as a matter of the plan, even if the law did not apply. What effect is that having on your client? I mean, your client was asked, and she did, to reimburse for monies that they had, that the plan had paid out for her medical care. Yes, Your Honor. Then the plan went on to subrogate itself to her claims against others responsible for the tort, right? The- Or not. Jessica Wyant made a recovery, and she paid the money back to the plan. She made a recovery from the tort fees, or is it? Yes, Your Honor. All right, so did the subrogation that the plan undertook affect that recovery, other than the plan asking for the $16,000 back? She made a recovery based on the amount of injury, and from that recovery, she had to pay back the $16,000. No, no, I got that, but the fact that the plan subrogates itself to her claims, what difference does that make to her in this lawsuit? She gets her $16,000 back if the subrogation- That has nothing to do with subrogation. It does, sir, that's the entire issue. How? How? Because they made a claim for reimbursement- Right. Under the policy. Under the policy- Is your point that because they're subrogated, because they are engaged in subrogation and pursuing subrogated accounts, subrogated claims, they are manifesting themselves as if they were an insurance company? Is that your point? No, my point, Your Honor, is that regardless, the other insurance entity deals with the 5-335. What I'm clarifying is, under the policy itself, they said the policy requires weigh-in to repay the money. The policy does not. So regardless of 335, when they said, you have to pay us back because the policy requires you to do so, that was wrong. But then you were just, the reason I prompted to ask questions is you were saying, plus the plan went out and pursued all these subrogate claims. They did. What does that have to do with this? The other subrogation claims? Yeah. That's the CAFA jurisdiction, Your Honor. All right, so your efforts to be a class, her efforts to be a class representative? Right, what it showed is that they had a fixed policy. Judge, we're here, when they talk about exhaustion and say, gee, if only we had the chance to know what plaintiff's arguments were, it's a red herring, Your Honor. We have filed six briefs in this case. We're at the Second Circuit Court of Appeals. They are still telling every member of your court that they are entitled to the subrogation. Their decisions are based on attorneys. They're based on the highest levels of the company. Your Honor, they have considered whether they're entitled to subrogation. They say that they are even today. How would returning the case for exhaustion allow them to reach a different decision than they're telling Your Honor today? It couldn't. And Judge Poole, if I could just briefly, you have asked a question. The plan is not a party today. That's true. However, the plan ultimately received the money. That is, the Orange Ulster Health Plan did receive the subrogation. Even though they're not a party today, they received the money from Mrs. Weyand for $16,000. They received the $400,000 from all the other people. So even though Orange Ulster is not in the case today, they are the beneficiary of the $16,000, and it was their authorization and their direction to FEA and Index to collect the money, which is why we're here and why the plan got the money to begin with. Why didn't you name them as a party? Because under the law, the FEA and Index are fully responsible for their own conduct. For example, Your Honor, if a thief steals $1,000 and then gives $500 of it away, he's responsible for the whole $1,000 that he took. He can't say, well, I don't have it anymore. I gave 500 away, get it from someone else. The person who does the wrong is responsible for all the wrong that they did. And what they do with the money afterward is of no moment. They are liable for what they did. All right, thank you. Thank you both. Thank you all three for a lively argument. We will reserve decision.